1  STEVEN G. KALAR
   Federal Public Defender
2  Northern District of California
   DEJAN M. GANTAR
3  Assistant Federal Public Defender
   55 South Market Street, Suite 820
4  San Jose, CA 95113
   Telephone:   (408) 291-7753
5  Facsimile:   (408) 291-7399
   Email:       Dejan_Gantar@fd.org
6

7
   Counsel for Defendant JUAN ROCHA a.k.a. PABLO NUÑEZ
8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 19–00382 EJD |
| Plaintiff, | **DEFENDANT'S MOTIONS IN LIMINE** |
| v. | Pretrial Conf.:   February 22, 2021 |
| JUAN ROCHA a.k.a. PABLO NUÑEZ, | Trial:            March 9, 2021 |
| Defendant. | |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

I.   Motion in Limine # 1:  The Court Should Not Read the Indictment to the Jury or Send It Into the Jury Room During Deliberations ................................................... 1

II.  Motion in Limine # 2:  The Government Should Be Precluded From Offering Evidence Under Federal Rule of Evidence 404(b) .................................................................... 1

III. Motion in Limine # 3:  The Government Should Be Precluded From Offering Evidence Not Produced in Discovery ........................................................................................ 2

IV.  Motion in Limine # 4:  The Government and Its Witnesses Should Be Precluded From Vouching ................................................................................................................... 2

V.   Motion in Limine # 5:  The Court Should Designate Government Witnesses as Under Defense Subpoena .................................................................................................... 3

VI.  Motion in Limine # 6:  The Court Should Exclude Government Witnesses Except for One Designated Case Agent, and Should Require that Case Agent to Testify First ......... 3

VII. Motion in Limine # 7:  The Court Should Permit the Defense's Mental Health Expert to Reman in the Courtroom as a Witness Who Is Essential to the Presentation of the Defense Case ............................................................................................................. 6

VIII. Motion in Limine # 8:  The Court Should Order Production of Grand Jury Transcripts ....... 7

XI.  Motion in Limine # 9:  The Court Should Allow Attorney Conducted Voir Dire .................. 7

X.   Motion in Limine # 10:  The Court Should Preclude the Government From Cross-Examining Defense Witnesses With "Guilt-Assuming" Questions and Hypotheticals ......... 8

XI.  Motion in Limine # 11:  The Court Should Give Preliminary Instructions on Unconscious Bias and Play W.D. Wash. Video on Uncconscious Bias to Jury Venire .......... 9

XII. Motion in Limine # 12:  The Defense Should Be Permitted to Introduce Mental Health Evidence Relevant to the Knowledge Element of the Offense ............................................. 10

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Federal Cases**

*Berger v. United States*,
　294 U.S. 78 (1935) .................................................................................................... 2-3, 3

*Crane v. Kentucky*,
　476 U.S. 683 (1986) ...................................................................................................... 10

*Dennis v. United States*,
　384 U.S. 855 (1966) ........................................................................................................ 7

*Geders v. United States*,
　425 U.S. 80 (1976) .......................................................................................................... 4

*Holmes v. South Carolina*,
　547 U.S. 319 (2006) ...................................................................................................... 10

*In re United States*,
　584 F.2d 666 (5th Cir. 1978) .......................................................................................... 5

*In re Winship*,
　397 U.S. 358 (1970) ...................................................................................................... 10

*Link v. Wabash*,
　270 U.S. 626, 630 ............................................................................................................ 3

*Lloyd v. McKendree*,
　749 F.2d 705 (11th Cir. 1985) ........................................................................................ 3

*Miller v. Universal City Studios, Inc.*,
　650 F.2d 1365 (5th Cir. 1981) ........................................................................................ 6

*Opus 3 Ltd. v. Heritage Park, Inc.*,
　91 F.3d 625 (4th Cir. 1996) ............................................................................................ 7

*Perry v. Leeke*,
　488 U.S. 272 (1989) ........................................................................................................ 6

*Robles v. United States*,
　279 F.2d 401 (9th Cir. 1996) .......................................................................................... 1

*States v. Sepulveda*,
　15 F.3d 1161 (1st Cir. 1993) .......................................................................................... 4

*Taylor v. United States*,
　388 F.2d 786 (9th Cir. 1967) .......................................................................................... 4

*United States v. Alfonso*,
　758 F.2d 728 (9th Cir. 1985) .......................................................................................... 2

*United States v. Arambula-Ruiz*,
   987 F.2d 599 (9th Cir. 1993) .................................................................................... 2

*United States v. Barker*,
   553 F.2d 1013 (6th Cir. 1997) .................................................................................. 3

*United States v. Barta*,
   888 F.2d 1220 (8th Cir. 1989) .................................................................................. 8

*United States v. Brewer*,
   947 F.2d 404 (9th Cir. 1991) .................................................................................... 4

*United States v. Brooke*,
   3 F.2d 1480 (9th Cir. 1993) ...................................................................................... 2

*United States v. Buchanan*,
   787 F.2d 477 (10th Cir. 1986) .................................................................................. 6

*United States v. Butera*,
   677 F.2d 1376 (11th Cir. 1982) ................................................................................ 6

*United States v. Candelaria-Gonzalez*,
   547 F.2d 291 (5th Cir. 1977) .................................................................................... 8

*United States v. Ell*,
   718 F.2d 291 (9th Cir. 1983) .................................................................................... 4

*United States v. Finley*,
   301 F.3d 1000 (9th Cir. 2002) ........................................................................... 11, 12

*United States v. George*,
   386 F.3d 383 (2d Cir. 2004) ................................................................................... 10

*United States v. Jackson*,
   60 F.3d 128 (2d Cir. 1995) ....................................................................................... 5

*United States v. Mayans*,
   17 F.3d 1174 (9th Cir. 1994) .................................................................................... 2

*United States v. Mehrmanesh*,
   689 F.2d 822 (9th Cir. 1982) .................................................................................... 2

*United States v. Mitchell*,
   733 F.2d 327 (4th Cir. 1984) .................................................................................... 5

*United States v. Odeh*,
   815 F.3d 968 (6th Cir. 2016) .................................................................................. 10

*United States v. Oshatz*,
   912 F.2d 534 (2nd Cir. 1990) ................................................................................ 8-9

*United States v. Pohlot*,
   827 F.2d 889 (3d Cir. 1987) ................................................................................... 10

*United States v. Pulley*,
   922 F.2d 1283 (6th Cir. 1991) ............................................................................................... 5

*United States v. Rahm*,
   993 F.2d 1405 (9th Cir. 1993) ......................................................................................... 11, 12

*United States v. Rhynes*,
   206 F.3d 349 (4th Cir. 1999) ................................................................................................. 6

*United States v. Rudberg*,
   122 F.3d 1199 (9th Cir. 1977) ............................................................................................... 3

*United States v. Seschillie*,
   310 F.3d 1208 (9th Cir. 2002) ............................................................................................ 6, 7

*United States v. Siers*,
   873 F.2d 747 (4th Cir. 1989) ................................................................................................. 8

*United States v. Spinner*,
   152 F.3d 950 (D.C. Cir. 1998) ............................................................................................... 2

*United States v. Utz*,
   886 F.2d 1148 (9th Cir. 1989) ............................................................................................... 1

*United States v. Vega*,
   188 F.3d 1150 (9th Cir. 1999) ............................................................................................ 1, 2

*United States v. Ye*,
   808 F.3d 395 (9th Cir. 2015) ............................................................................................... 10

*United States v. Zamudio*,
   26 Fed. Appx. 628 (9th Cir. 2001) (unpublished) .............................................................. 11

**Federal Statutes**

18 U.S.C. § 1542 .................................................................................................... 10, 12, 13

**Federal Rules**

Fed. R. Crim. P. 12 ........................................................................................................ 2, 10-12
Fed. R. Crim. P. 12.2 ............................................................................................................ 12
Fed. R. Crim. P. 16 ................................................................................................................. 2
Fed. R. Crim. Proc. 26.2 ........................................................................................................ 7
Fed. R. Evid. 404 ................................................................................................................ 1, 2
Fed. R. Evid. 611 ................................................................................................................ 5, 6
Fed. R. Evid. 615 ................................................................................................................ 3-6
Fed. R. Evid. 702 ............................................................................................................ 11, 12
Fed. R. Evid. 704 .................................................................................................................. 11
Rule 17 .................................................................................................................................... 3

# INTRODUCTION

Defendant Juan Rocha, a.k.a. Pablo Nuñez, by and through his counsel, submits following motions in limine in conformity with the Court's pretrial order and Local Rule 47-2. These motions are based upon the attached memorandum of points and authorities, all files and records in this case, and any further evidence as may be adduced at the hearing on these motions. Mr. Rocha/Nuñez reserves the right to supplement these motions during the course of trial as needed.

### I.  Motion in Limine # 1:  The Court Should Not Read the Indictment to the Jury or Send It Into the Jury Room During Deliberations

"[I]t is well settled that the jury must be fairly apprised of the nature of the charges against the defendant, but this does not necessarily require a reading of the indictment to the jury either in whole or in part." *Robles v. United States*, 279 F.2d 401, 403-04 (9th Cir. 1996). The better practice is to read the jury a brief, neutral statement summarizing the charges. Doing so would fairly apprise the jury of the charges without exposing the jurors to the indictment, parts of which are prejudicial. Because the language of the indictment "tracks" the language of the charged statute, it is probable that the jury will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes that *another* jury – the grand jury – has already made the relevant determinations in this case. Similarly, the Indictment recites "the grand jury charges," which could persuade jurors who lack knowledge of the grand jury system that another jury has already found the defendant guilty. Mr. Rocha/Nuñez also requests that this Court caution the jury that the indictment is not evidence. *See United States v. Utz*, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

### II.  Motion in Limine # 2:  The Government Should Be Precluded From Offering Evidence Under Federal Rule of Evidence 404(b)

Rule 404(b) requires the government to provide "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown," of the general nature of any other acts evidence it intends to introduce at trial. *United States v. Vega*, 188 F.3d 1150, 1152-54 (9th Cir. 1999). Similarly, Local Rule 16-1(c)(3) requires the government to disclose "a summary of any evidence of other crimes, wrongs or acts which the government intends to offer under Fed. R. Evid. 404(b), and which is supported by documentary evidence or witness statements in sufficient

detail that the Court may rule on the admissibility of the proffered evidence."  Crim. L.R. 16-1)(c)(3); *see also United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994) (explaining that if prosecution fails to make adequate disclosure, the trial court cannot "make the focused determination mandated" by Rule 404(b)).  This rule applies regardless of whether the government seeks to offer the evidence in its case-in-chief or for impeachment or rebuttal purposes.  *See Vega*, 118 F.3d at 1153-54.

Significantly, merely "providing such evidence to the defense in discovery is not enough to satisfy the requirements of Rule 404(b), which requires the government specifically to disclose 'the general nature of any such evidence it intends to introduce at trial.'" *United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998).  Instead, the government must "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (citations omitted); *see also United States v. Brooke*, 3 F.2d 1480, 1483 (9th Cir. 1993); *United States v. Arambula-Ruiz*, 987 F.2d 599, 602-03 (9th Cir. 1993); *United States v. Alfonso*, 758 F.2d 728, 739 (9th Cir. 1985). The government must then demonstrate that the proffered evidence meets the requirements for admission under Rules 404(b) and 403. *See Mayans*, 17 F.3d at 1181-83.

Although the government has indicated that it intends to comply with the defense's previous request for notice, it has not yet done so.  Any attempt to introduce such evidence without the requisite timely notice should be denied.

### III. Motion in Limine # 3:  The Government Should Be Precluded From Offering Evidence Not Produced in Discovery

Pursuant to Rule 16(d)(2), the defense requests that the Court prohibit the government from introducing at trial any documents not yet produced in discovery. *See* Fed. R. Crim. P. 16(d)(2).  In addition, pursuant to Rule 12(b)(4), the defense requests that the Court order the government to provide prompt written notice of its intention to use any discoverable evidence in its case-in-chief. *See* Fed. R. Crim. P. 12(b)(4).  The defense requests that the Court exclude any evidence that the government was obligated to produce before trial pursuant to Rule 16.

### IV. Motion in Limine # 4:  The Government and Its Witnesses Should Be Precluded From Vouching

Vouching, whether by the prosecution or by its witnesses, is impermissible. *Berger v.*

*United States*, 294 U.S. 78, 88-89 (1935).  As the Supreme Court has explained, prosecutorial vouching poses a risk of prejudice because "such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." *Id.*  In addition, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id.*

Not only is vouching by the prosecutor prohibited, but vouching by government agents is prohibited as well.  *See United States v. Rudberg*, 122 F.3d 1199, 1204 (9th Cir. 1977) (holding that vouching can occur in a "very powerful form" through the testimony of a government agent because the jury may identify the agent's position with the integrity of the United States).

**V.     Motion in Limine # 5:  The Court Should Designate Government Witnesses as Under Defense Subpoena**

If government witnesses are released by the government, without informing the defense, the witnesses may become unavailable.  In order for the defendants to retain access to these witnesses, the defense requests that the Court order that any released government witnesses be considered under defense subpoena.  Indigent defendants such as Mr. Rocha/Nuñez are provided the opportunity to have the government subpoena witnesses on their behalf by the Sixth Amendment and by Rule 17(b) of the Federal Rules of Criminal Procedure.  *United States v. Barker*, 553 F.2d 1013, 1019 (6th Cir. 1997). In addition, this Court has the inherent power to subpoena witnesses on behalf of indigents.  *See Lloyd v. McKendree*, 749 F.2d 705, 706-07 (11th Cir. 1985); *Link v. Wabash*, 270 U.S. 626, 630 1962).  To safeguard against the loss of vital witness testimony and to ensure that Mr. Rocha/Nuñez is able to fully exercise his Fifth and Sixth Amendment rights, the defense requests that the Court exercise its inherent power to order that any released government witnesses be considered under defense subpoena for the duration of the trial.

**VI.    Motion in Limine # 6:  The Court Should Exclude Government Witnesses Except for One Designated Case Agent, and Should Require that Case Agent to Testify First**

Mr. Rocha/Nuñez is entitled to exclusion of government witnesses as a matter of law.  *See* Fed. R. Evid. 615 ("[A]t the request of a party the court shall order witnesses excluded so that they cannot

1  hear the testimony of other witnesses."). Rule 615 is intended to ensure a fair trial by preventing
2  collusion of witnesses and fabrication of testimony, and by helping reveal instances where such
3  fabrication or collusion actually occurs. *See Geders v. United States*, 425 U.S. 80, 87 (1976)
4  (observing that the rule "exercises a restraint of witnesses 'tailoring' their testimony to that of earlier
5  witnesses; and it aids in detecting testimony that is less than candid"); *see also Taylor v. United*
6  *States*, 388 F.2d 786, 788 (9th Cir. 1967) (exclusion is designed to "prevent the shaping of testimony
7  by hearing what other witnesses say").

8  Rule 615 makes the exclusion of witnesses mandatory upon request. *See United States v. Ell*,
9  718 F.2d 291, 292 (9th Cir. 1983) (citing Fed. R. Evid. 615 Advisory Committee's note); *see also*
10 *United States v. Brewer*, 947 F.2d 404, 407-11 (9th Cir. 1991) ("The use of the word 'shall' makes it
11 clear that a district court must comply with a request for exclusion.").

12 Witnesses should be excluded during motion hearings, opening statements and closing
13 arguments, as well as during witness testimony. Rule 615 requires that non-exempt witnesses be
14 excluded from the courtroom during all witness testimony; that is, that they should remain excluded
15 even after testifying. Fed. R. Evid. 615; *see also Ell*, 718 F.2d at 293 (holding that trial court erred by
16 not excluding prosecution witness who had already testified because the dangers against which Rule
17 615 is designed to protect are present when witnesses are only partially excluded since "a rebuttal
18 witness who has already testified . . . may wish to tailor rebuttal testimony [and]. . . cover up
19 inconsistencies in earlier testimony").

20 There is also substantial authority stating that either under Rule 615, or through an exercise of a
21 court's inherent powers, it is proper to extend the period of exclusion in order to promote a fair trial.
22 *See, e.g.,United States v. Sepulveda*, 15 F.3d 1161, 1175-77 (1st Cir. 1993) (holding that in addition
23 to the power to exclude under Rule 615, a district court retains inherent power to "make whatever
24 provisions it deems necessary to manage trials, . . . including the sequestration of witnesses *before,*
25 *during and after* their testimony") (citing *Geders*, 425 U.S. at 87) (emphasis added); *see also* 4
26 Weinstein's Federal Evidence § 615.02[2][a] (Matthew Bender 2d ed. 2000) ("The customary
27 practice is to exercise discretion to exclude prospective witnesses during openings and any arguments
28 or offers of proof when a witness' testimony may be summarized."). Because the truthfulness of

witness testimony and the ability to detect fabricated testimony is best achieved through a comprehensive exclusion order, the Court should extend the scope of its order to cover opening and closing arguments, as well as hearings for pretrial motions.

Pursuant to Rule 615, only four categories of witnesses are not subject to the full scope of a court's exclusion order: (1) a party who is a natural person; (2) a designated representative for party that is not a natural person; (3) a person whose presence is essential to presenting the party's claim or defense; and (4) a person whose presence is authorized by statute. Fed. R. Evid. 615. There is a strong presumption in favor of exclusion, and the party opposing exclusion "has the burden of demonstrating why the pertinent Rule 615 exception applies." *United States v. Jackson*, 60 F.3d 128, 135 (2d Cir. 1995). Although a federal agent, or a local law enforcement officer working with federal agents, qualifies for exemption from an exclusion order under Rule 615(2), the plain language of the rule, as well as the notes of the Advisory Committee, indicate that only one agent can be exempt under this provision: "As the equivalent of the right of a natural-person party, a party which is not a natural person is entitled to have *a representative* present.") (emphasis added); *see also United States v. Pulley*, 922 F.2d 1283, 1286 (6th Cir. 1991).

Moreover, when a government witness is exempt from a court order of exclusion under Rule 615, that witness should testify before all other non-exempt government witnesses or not at all. This approach necessarily dovetails with Fed. R. Evid. 611(a), which provides in that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence to make the interrogation and presentation effective for the ascertainment of the truth." Fed. R. Evid. 611(a).

Requiring exempted witnesses to testify first helps achieve the goals of Rule 615, while respecting the rule's enumerated exemptions. *See United States v. Mitchell*, 733 F.2d 327, 329 (4th Cir. 1984) ("[B]etter practice suggests that if the [exempt] agent is to testify, he should testify as the government's first witness, unless, . . . there [are] good reasons otherwise."); *In re United States*, 584 F.2d 666, 667 (5th Cir. 1978) (while agent designated under Rule 615(2) as government's representative could not be excluded, it was proper to order the agent to testify at an early stage of trial); *see also* 2 Federal Rules of Evidence Manual, 1166 (Stephen Salzburg, Michael M. Martin,

DEFENDANT'S MOTIONS IN LIMINE
*ROCHA*, CR 19–00382 EJD

5

1  Daniel J. Capra eds. 1998) (recommending that the trial court "use its authority under Rule 611(a) to
2  require the non-sequestered witness to testify early, if not first, in the case").

3      Finally, witnesses should be directed not to read trial transcripts or discuss the case or their
4  testimony with anyone other than government counsel.  Although Rule 615 does not provide clear
5  guidance as to what instructions should be given to excluded witnesses, "[i]t is a common practice for
6  a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is
7  completed."  *Perry v. Leeke*, 488 U.S. 272, 279 (1989).  Indeed, the Tenth Circuit has held that
8  failure to instruct the witnesses about the scope and importance of an exclusion order may warrant
9  reversal on appeal.  *See United States v. Buchanan*, 787 F.2d 477, 484-485 (10th Cir. 1986).

10      Following the same rationale, several circuits have held that the reading of trial transcripts
11  contravenes the purpose of Rule 615.  *See, e.g., Miller v. Universal City Studios, Inc.*, 650 F.2d 1365,
12  1373 (5th Cir. 1981) ("The opportunity to shape testimony is as great with a witness who reads trial
13  testimony as with one who hears the testimony in open court. The harm may be even more
14  pronounced . . ., because the [witness] need not rely on his memory of the testimony but can
15  thoroughly review and study the transcript in formulating his own testimony."); *United States v.*
16  *Rhynes,* 206 F.3d 349, 370 (4th Cir. 1999) (observing that trial courts should be "alert to the myriad
17  ways in which individuals may attempt to circumvent sequestration orders").  For similar reasons,
18  witnesses who fall under one of the Rule 615 exceptions should also be directed not to speak with
19  anyone about the case (other than counsel). *See United States v. Butera*, 677 F.2d 1376, 1380-81
20  (11th Cir. 1982) (holding that an undercover agent designated as government's representative, and
21  therefore exempt under Rule 615(2), was nevertheless properly directed not to discuss case with other
22  witnesses).

23  **VII. Motion in Limine # 7:  The Court Should Permit the Defense's Mental Health Expert to Remain in the Courtroom as a Witness Who Is Essential to the Presentation of the Defense Case**
24  

25      Rule 615(c) precludes the exclusion of "a person whose presence a party shows to be essential
26  to presenting the party's claim or defense."  Fed. R. Evid. 615(c).  As the Ninth Circuit has noted,
27  "[i]n many circumstances, a potential expert witness will be an 'essential party' within the meaning
28  of Rule 615(3)."  *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002).  In *Seschillie,* for

1  example, the Ninth Circuit held that the district court abused its discretion by excluding from the
2  courtroom an expert whom the defendant intended to call to testify regarding the plausibility of the
3  defendant's claim that the gun had been discharged accidentally.  *See id.* at 1214.  The Court noted
4  that "'an expert who is not expected to testify to facts, but only assumes facts for purposes of
5  rendering opinions, might just as well hear all of the trial testimony so as to be able to base his
6  opinion on more accurate factual assumptions.'"  *Id.* (quoting *Opus 3 Ltd. v. Heritage Park, Inc.,* 91
7  F.3d 625, 629 (4th Cir. 1996)); *see also id.* ("[T]he district court should have considered [the
8  defendant's] explanation that [the witness] needed to hear the testimony of [other witnesses] in order
9  to properly provide opinion evidence.").
10        Here, the government is required to prove not only that Mr. Rocha/Nuñez made a false
11  statement on his passport application, but also that he did so *knowing* that the statement was false.
12  The defense anticipates that it will call an expert to testify regarding Mr. Rocha/Nuñez's mental
13  health as it relates to the knowledge element of the offense.  *See* Motion in Limine # 12, *infra.*  As in
14  *Seschillie,* this witness will not testify to facts, but will assume facts based, in part, on statements
15  attributed to Mr. Rocha/Nuñez by government witnesses, as well as Mr. Rocha/Nuñez's trial
16  testimony should he choose to testify.  Because this witness is essential to Mr. Rocha/Nuñez's
17  defense, he cannot be excluded from the courtroom.
18  **VIII.   Motion in Limine # 8:   The Court Should Order Production of Grand Jury Transcripts**
19        The Court should order production of grand jury transcripts if a witness who likely will testify
20  at the trial of Mr. Rocha/Nuñez also is likely to have testified before the grand jury.  *Dennis v. United*
21  *States*, 384 U.S. 855 (1966); Fed. R. Crim. Proc. 26.2(f)(3).  The defense requests that the
22  government make such transcripts available in advance of trial to facilitate the orderly presentation of
23  evidence and to remove any need for recess in the proceedings for defense counsel to examine the
24  statements pursuant to Federal Rule of Criminal Procedure 26.2(d).
25  **IX.    Motion in Limine # 9:   The Court Should Allow Attorney Conducted Voir Dire**
26        Pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure, to provide effective
27  assistance of counsel and to exercise Mr. Rocha/Nuñez's Sixth Amendment right to trial by an
28  impartial jury, defense counsel requests the opportunity to personally voir dire the prospective

members of the jury.

### X. Motion in Limine # 10: The Court Should Preclude the Government From Cross-Examining Defense Witnesses With "Guilt-Assuming" Questions and Hypotheticals

A "guilt-assuming" question is a question in which the prosecutor uses the facts underlying the defendant's arrest to attack and discredit a defense witness' testimony. Such questions present the jury with the ideas that because the defendant has been "arrested," it is unreasonable: (1) for the defendant to have a good reputation, or (2) for anyone, specifically the witness, to express a positive opinion about the defendant. Moreover, the use of such inappropriate questions place the character witness in a "Catch-22" - whereby the witness must either maintain his or her position and appear incredible in the face of the prosecutor's attack or agree with the prosecutor thereby casting a "thirteenth vote" for conviction. Accordingly such questions undermine our criminal justice system's presumption that a defendant is innocent until proven guilty. *See, e.g., United States v. Barta*, 888 F.2d 1220, 1225 (8th Cir. 1989) (cross-examination questions regarding whether the defense character witness is familiar with the facts underlying the charge "exceed the bounds of propriety, premised, as [such questions] are, on a presumption of guilt"); *United States v. Siers*, 873 F.2d 747, 749 (4th Cir. 1989) (in case where the defendant asserted self-defense, improper to cross, "Would it change your opinion of [the defendant] being a peaceful person if he shot an individual and wounded him with a sawed-off shotgun?"); *United States v. Candelaria-Gonzalez*, 547 F.2d 291, 293-94 (5th Cir. 1977) ("Government counsel on cross-examination asked if [the defendant's] indictment would affect the witness' opinion of him and his reputation in general").

"Guilt-assuming" questions not only undermine the presumption of innocence but they are tantamount to prosecutorial vouching. *See Barta*, 888 F.2d at 1225. Furthermore, such questions corrupt the jury's role as the ultimate fact-finder. Jurors have the ability and obligation to decide for themselves based upon the evidence presented what significance they should attach to the underlying facts and evidence of Mr. Rocha/Nuñez's actions and character. *See United States v. Oshatz*, 912 F.2d 534, 538 (2nd Cir. 1990) ("Insofar as non-expert character witnesses are concerned . . . we believe that the probative value of hypothetical questions such as the one at issue herein is negligible and should not be asked. The jury is in as good a position as the non-expert witness to draw proper

inferences concerning the defendant's character from its own resolution of the issue") (citation omitted).

### XI. Motion in Limine # 11: The Court Should Give Preliminary Instruction on Unconscious Bias and Play W.D. Wash. Video on Unconcsious Bias to Jury Venire

On April 22, 2018, at the Northern District Judicial Conference, this Court had the opportunity to hear a presentation on the issue of "Jury Selection: Detecting and Understanding Jury Bias." The Honorable Richard Jones, District Judge for the Western District of Washington, presented an 11-minute video that all district judges in the Western District of Washington play for prospective jurors when they are called for jury duty.[1] Additionally, the Western District of Washington has incorporated unconscious bias language into a preliminary instruction, the witness credibility instruction, and a closing instruction, all of which are read to jurors in each case. These instructions are submitted as part of Mr. Rocha/Nuñez's proposed special jury instructions. In this district, the Honorable Beth Labson Freeman has given a version of the unconscious bias instruction and played the W.D. Washington video for prospective jurors. *See* Order Granting Joint Defense Request for the Court to Give Preliminary Instruction on Unconscious Bias and to Play W.D. Washington Video on Unconscious Bias to Jury Venire, *United States v. Meili Lin, et al.,* No. CR-15-00065-BLF (N.D. Cal.), ECF Docket # 207.

As this Court heard at the conference, the video and proposed instructions are intended to alert jurors to the concept of unconscious bias. This serves the purpose of raising awareness of the associations that jurors may be making without express knowledge and directing the jurors to avoid relying on these associations. The present case is likely to raise issues of unconscious bias, and possible assumptions, in the minds of prospective jurors given Mr. Rocha/Nuñez's name and Mexican heritage. Particularly in the current political climate, it is important to educate jurors about the need to evaluate the evidence without prejudging or letting their unconscious mindset impact their fair evaluation of the evidence. The video is very short and serves to enlighten the jurors on their role. Given that the purpose of voir dire is to select a jury without prejudices or biases, the defense requests that the Court show the W.D. Washington video and give the related special instructions

---

[1] This video can be seen at www.wawd.uscourts.gov/jury/unconscious-bias.

DEFENDANT'S MOTIONS IN LIMINE
*ROCHA*, CR 19–00382 EJD

9

proposed by Mr. Rocha/Nuñez.

## XII. Motion in Limine # 12: The Defense Should Be Permitted to Introduce Mental Health Evidence Relevant to the Knowledge Element of the Offense

Mr. Rocha/Nuñez is charged with violating the first paragraph of 18 U.S.C. § 1542, which makes it a crime to "willfully and knowingly make[] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States." 18 U.S.C. § 1542. To obtain a conviction, the government must prove beyond a reasonable doubt not only that Mr. Rocha/Nuñez provided false information in a passport application, but also that he did so *knowing* that the information was false. *See United States v. Ye*, 808 F.3d 395, 399 (9th Cir. 2015) (government must prove that "in applying for a passport, the defendant made a statement that the defendant *knew* to be untrue") (emphasis added); *see also United States v. George*, 386 F.3d 383, 395 (2d Cir. 2004) (holding that the first paragraph of § 1542 "requires the government to prove that the defendant provided information in a passport application that he or she knew to be false.").

Because knowledge is an element of the offense, Mr. Rocha/Nuñez has a constitutional right to present evidence negating knowledge. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "Because the government must prove every element of a crime beyond a reasonable doubt, a defendant's right to present a defense 'generally includes the right to the admission of competent, reliable, exculpatory evidence' to negate an element of the offense." *United States v. Odeh*, 815 F.3d 968, 977 (6th Cir. 2016) (citing *In re Winship*, 397 U.S. 358, 363-64 (1970), and quoting *United States v. Pohlot*, 827 F.2d 889, 900-01 (3d Cir. 1987)).

Mr. Rocha/Nuñez intends to use mental health evidence to demonstrate that he lacked the requisite knowledge that the information on his application was false. This evidence may include statements made during his post-arrest interview, his medical records from the Bureau of Prisons (BOP), the expert testimony of the BOP psychologist who examined him, and the testimony of a defense expert.[2] Specifically, the defense intends to offer evidence that Mr. Rocha/Nuñez suffers

---

[2] As noted in the defense's Rule 12.2(b) notice, the defense is in the process of identifying and

from mental health conditions – including delusions, an atypical belief system, and other thought disorders – that can negate the knowledge element in this case.

In general, the testimony of a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," provided that: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

While an expert cannot "state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," Fed. R. Evid. 704(b), the Ninth Circuit has consistently, held that defendants are entitled to present expert psychological testimony where the defendant's mental health condition is relevant to knowledge. *See, e.g., United States v. Finley,* 301 F.3d 1000, 1006, 1010 (9th Cir. 2002) (in prosecution for using fraudulent financial instruments, reversible error to exclude expert testimony that defendant suffered from "an atypical belief system" that "might inhibit him from reaching a conclusion that the instruments were fake"); *United States v. Rahm,* 993 F.2d 1405, 1413 (9th Cir. 1993) (in prosecution for attempting to pass counterfeit currency, reversible error to exclude expert testimony regarding defendant's "diagnosed perceptual difficulties, which were relevant to a fact in issue – whether she knew the money was counterfeit"); *United States v. Zamudio*, 26 Fed. Appx. 628, *1 (9th Cir. 2001) (unpublished) (in drug smuggling prosecution, reversible error to exclude expert mental health testimony where "the trial turned on whether [the defendant] knowingly possessed the marijuana," and the defendant's "bipolar and manic tendencies and thought disorders" were "relevant ... to the jury's evaluation of [his] testimony that he thought he was taking the truck to get a smog check").

Significantly, the defense is not required to demonstrate that the defendant suffers from an identified mental disorder.  As the Ninth Circuit recognized in *Rahm*, "[i]mporting such a prerequisite

---

retaining a mental health expert.  So too, the investigation in this case is ongoing, and the defense therefore reserves the right to seek admission of any other medical or mental health records acquired through that investigation, relevant to Mr. Rocha/Nuñez's knowledge.

into Fed. R. Evid. 702 would flatly contradict Fed. R. Crim. P. 12.2." *Rahm,* 993 F.2d at 1411. Noting that Rule 12.2 "requires advance notice whenever 'a defendant intends to introduce expert testimony relating to a mental disease or defect *or any other mental condition* of the defendant bearing upon the issue of guilt,'" the Court reasoned that "[i]f admission of psychological testimony under Fed. R. Evid. 702 required a mental disorder, the reference in Rule 12.2(b) to 'other mental condition' would be entirely superfluous." *Id.* (emphasis in original).  Thus, for example, in *Rahm*, the Court held that it was reversible error to exclude testimony that the defendant suffered from "perceptual difficulties and lack of insight." *Id.*  And in *Finley*, the Court held that even though the expert had not given a diagnosis of delusional disorder, he still could testify that "a delusion is another psychological term for an atypical belief system," and that people with atypical delusions "function very normally in everyday life unless you touch their delusions." *Finley*, 301 F.3d at 1006, 1010.  As the Court explained, "[j]urors are unlikely to know that psychologists have identified a personality disorder that explains why a seemingly normal person could reject or distort certain overwhelmingly true information," and the expert's testimony "would have offered an explanation as to how an otherwise normal man could believe that these financial instruments were valid and reject all evidence to the contrary." *Id.* at 1013.

Finally, it makes no difference that § 1542 is a general intent crime. The government is required to prove beyond a reasonable doubt that Mr. Rocha/Nuñez knew the information in his application was false, *regardless* of whether § 1542 is a specific intent or general intent crime. The Sixth Circuit's decision in *Odeh* is instructive. The defendant was charged with making false statements on her naturalization application. Specifically, she stated that she had never been arrested, convicted, or imprisoned, even though she had actually been convicted and imprisoned in Israel for bombing a supermarket and attempting to bomb the British Consulate. *Id.* at 973. At trial, she conceded that the statements were false, but contended that she lacked knowledge of their falsity. *Id.* In support of this argument, she sought to present expert testimony that she suffered from "chronic PTSD and that this disorder operated to automatically filter out [her] time in Israel, causing [her] to interpret questions so as to avoid any thought of her trauma." *Id.* at 975-76. The district court excluded the testimony on the ground that such evidence was only admissible to negate the mens rea

DEFENDANT'S MOTIONS IN LIMINE
*ROCHA*, CR 19–00382 EJD
12

1  of a *specific intent* crime.  *See id.* at 977.  The Sixth Circuit reversed and remanded, explaining that
2  "[r]egardless of whether 18 U.S.C. § 1425(a) is a specific or general intent crime, [the] proffered
3  testimony is relevant to whether Odeh knew that her statements were false." *Id.* at 976.  The same
4  reasoning applies to § 1542.

5  For the foregoing reasons, the defense requests that the Court allow Mr. Rocha/Nuñez to
6  present evidence, including expert testimony, of his mental condition as it relates to the element of
7  knowledge.

## CONCLUSION

For the foregoing reasons, and for such other reasons as may appear at the hearing on this motion, Mr. Rocha/Nuñez requests that the Court grant his motions in limine, and accord such other relief as this Court deems just.  Mr. Rocha/Nuñez requests leave to file further motions as may be necessary.

Dated:     February 16, 2021              Respectfully submitted,

                                          STEVEN G. KALAR
                                          Federal Public Defender
                                          Northern District of California

                                                    /S
                                          _____
                                          DEJAN M. GANTAR
                                          Assistant Federal Public Defender